# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# FT. MYERS DIVISION

**UNITED STATES OF AMERICA,**

      **Plaintiff**

-vs-                                         Case No. 2:10-cr-36-FtM-36DNF

**DARRYL POWELL,**

      **Defendant.**

_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

This cause came on for consideration on the following motion filed herein:

> **MOTION:**    MOTION TO SUPPRESS EVIDENCE (Doc. No. 18)
>
> **FILED:**      May 28, 2010
>
> _____
>
> **THEREON** it is **RECOMMENDED** that the motion be **DENIED**.

The Defendant Daryl Powell is requesting that the Court suppress the evidence derived from a search of a residence conducted on July 1, 2009, and suppress all statements made by the Defendant. On June 9, 2010, the Government filed a Response to Motion to Suppress Evidence (Doc. 20). The Defendant is charged in an Indictment (Doc. 1) with being a convicted felon in possession of a firearm and ammunition in violation of 18 U.S.C. §922(g)(1), 924(e) and Section 2. An evidentiary hearing was held on June 22, 2010.

**I. Evidence**

The Government presented the testimony of Detective Candice Petaccio of the Fort Myers Police Department. The Government introduced into evidence a DVD containing a video recording of portions of the Defendant's arrest, and the Application and Affidavit for the Search Warrant, and the Search Warrant. (See, Gov. Exh. 1 and 2). The Defendant presented no testimony or evidence.

The following is the testimony of Detective Petaccio. Detective Petaccio has worked for the Fort Myers Police Department for six years, and became a detective two years ago. (Tr.[1] p. 13). On June 26, 2009,[2] Detective Petaccio presented an Affidavit and Application for Search Warrant for the residence at 2651 Jackson Street to Judge Thomas Corbin, Circuit Court Judge of the Twentieth Judicial Circuit, in and for Lee County, Florida. (Tr. p. 14). On that same date, Judge Corbin signed the Search Warrant and on July 1, 2009, the Search Warrant was executed. (Tr. p. 14-16).

On July 1, 2009, Detective Petaccio and other officers arrived at 2651 Jackson Street at approximately 5:30 a.m. for surveillance. (Tr. p. 18). Prior to executing the Search Warrant, Detective Petaccio ran a records check on the Defendant and found that he was a convicted felon. (Tr. p. 27). The Search Warrant was executed at approximately 6:30 a.m. (Tr. p. 18). The SWAT team proceeded to the door of the residence, knocked and announced themselves, entered the residence, and detained the occupants. (Tr. p. 19). Jason Petaccio of the SWAT team told Detective Petaccio that the Defendant attempted to flee through the rear of the residence. (Tr. p. 19, 43). The Defendant threw an unknown object, later identified as a clear plastic baggie into a bedroom. (Tr. p. 19). The

---

[1] "Tr." refers to the Transcript (Doc. 28) filed on July 2, 2010.

[2] The date on the Affidavit was the "26th Day of June 2008." Detective Petaccio testified that the actual date the Affidavit was signed was June 26, 2009, and the "2008" was a typographical error. (Tr. p. 16-17).

baggie previously contained cocaine which was now all over the bedroom. (Tr. p. 19). The SWAT team secured the individuals found in the residence, namely the Defendant, his wife Diane Powell, five children, and Horace Henderson. (Tr. p. 19-20). Officers on the SWAT team saw a rifle in the Defendant's bedroom and ammunition in the Defendant's closet and told Detective Petaccio about these items. After the Defendant was secured, Detective Petaccio read the Search Warrant, and *Miranda*[3] rights to the Defendant and the other people present. (Tr. p. 20-21). The Defendant stated that he understood his rights. (Tr. p. 25).

After the Defendant received his rights, Detective Petaccio began interviewing the Defendant. (Tr. p. 25). She took him inside the residence, separate from the other individuals present. (Tr. p. 25). The Defendant was handcuffed. (Tr. p. 46). Detective Petaccio did not coerce the Defendant, did not make any promises to the Defendant, and no weapons were drawn. (Tr. p. 26). Detective Petaccio felt that the Defendant had no difficulty in understanding his rights. (Tr. p. 27). The Defendant responded at the interview that he lived at the residence with his wife and kids and that he slept in the middle room. (Gov. Ex. 1). His wife slept in a separate room. (Gov. Exh. 1). He stated that he had no illegal drugs or weapons in the residence and had not seen any illegal drugs or weapons there. (Gov. Exh. 1) Detective Petaccio said that a gun was seen at the residence, and the Defendant said it was a BB gun. (Gov. Exh. 1). The Defendant told Detective Petaccio that he was clean and any illegal drugs found in the house were not his. (Gov. Exh. 1) The Defendant stated that he does not sell illegal drugs but did sell illegal drugs twenty years ago. (Gov. Exh. 1). The Defendant then asked to speak to a lawyer, and the interview ceased. (Gov. Exh. 1). Detective Petaccio did not ask the

---

[3] *Miranda v. Arizona*, 384 U.S. 436 (1966).

Defendant any more questions after he requested an attorney. (Tr. p. 28). The Defendant was taken back outside with the other residents of the house. (Tr. p. 28).

After the statements were taken, then a search of the residence occurred. (Tr. p. 47, 60). In the Defendant's bedroom a .22caliber rifle was found in the corner leaning against the wall in plain view. (Tr. p. 29). On the top shelf in the closet, which did not have a door, a box of ammunition was found in plain sight. (Tr. p. 29-30). The rifle and the ammunition were seized by the officers. (Tr. p. 29-30). Detective Petaccio knew that possession of a firearm and ammunition was an additional violation for the Defendant because he was a convicted felon. (Tr. p. 30).

Detective Petaccio's duties included being custodian for the items seized. (Tr. p. 48, 50). She photographed all of the items prior to them being seized. (Tr. p. 48). She secured the rifle making sure it was unloaded then removed it from the residence. (Tr. p. 49). Detective Petaccio also photographed the ammunition on the shelf, then packed and sealed it, and it was sent to Florida Department of Law Enforcement for fingerprints. (Tr. p. 56-57). A female's fingerprints were found on the box of ammunition. (Tr. p. 57-58).

Cocaine residue was found on the plastic baggie the Defendant threw, and cocaine residue was found on the floor of the Defendant's bedroom. (Tr. p. 32, 43). When the search was completed, Detective Petaccio walked by the Defendant and he asked her what charges were being brought against him. (Tr. p. 31). Detective Petaccio responded that the charges were possession of a firearm by a convicted felon, possession of ammunition, possession of cocaine, and destruction of evidence. (Tr. p. 31). After the Defendant was advised of the charges, he stated that he was holding the ammunition for his grandfather, and the firearm was a BB gun. (Tr. p. 31-32, 33). Detective Petaccio testified that she did not pose any questions to the Defendant after he invoked his right to counsel. (Tr. p. 34).

The items found in the residence and seized pursuant to the search warrant were drug paraphernalia, a spoon with heroine residue, crack pipe and a push rod, ten empty baggies containing heroin residue, a small pink baggie containing heroin, one piece of crack cocaine, needles with heroin residue, mail in the Defendant and his wife's name, a rifle, and ammunition. (Tr. p. 35). In the holding cell, the Defendant made a statement in response to his wife's declaration that "'they know everything is mine in there because I'm the user and you're the dealer.'" (Tr. p. 36). The Defendant responded telling his wife to shut up and not to say another word. (Tr. p. 36). This conversation was monitored but not recorded. (Tr. p. 36-37).

Detective Petaccio stated that she began investigating the Defendant about a year prior to the execution of the search warrant. (Tr. p. 40-41). In February 2009, she did conduct direct surveillance of the Defendant. (Tr. p. 40).

**II. Analysis**

The Defendant argues that the Application and Affidavit in support of the Search Warrant were insufficient to establish probable cause, the seizure of the firearm and ammunition was outside of the scope of the Search Warrant, and the Defendant's statements were not voluntarily made.

**A. Sufficiency of the Affidavit and Application for Search Warrant**

The Defendant asserts that the Search Warrant lacked probable cause to believe that contraband would be found at the residence. The Defendant contends that the informant was not shown to be reliable. The Government argues that the Search Warrant contained probable cause. An Affidavit for a Search Warrant is presumptively valid. *Franks v. Delaware*, 438 U.S. 154, 171 (1978). "'Probable cause to support a search warrant exists when the totality of the circumstances allow[s] a conclusion that there is a fair probability of finding contraband or evidence at a particular location.'"

*United States v. Grice,* 335 Fed.Appx. 924, 926 (11th Cir. 2009) (quoting *United States v. Brundidge*, 170 F.3d 1350, 1352 (11th Cir. 1999)). Probable cause is the assessment of probabilities pertaining to a certain factual situation. *Illinois v. Gates*, 462 U.S. 213, 232 (1983). The veracity and reliability of an informant is better understood in a totality-of-the-circumstances analysis which allows the deficiency in one to be compensated by the other. *Id*.

In the instant case, the Application and Affidavit contained the following information regarding the confidential informant ("CI"). The confidential information had been in contact with the Fort Myers Police Department's Special Investigations Group for three weeks and provided information regarding subjects and locations concerning the distribution of controlled substances. (Exh. 2, ¶8). The information provided by the CI was corroborated through other sources and through surveillance and found to be reliable. (Exh. 2, ¶8). The CI had conducted controlled purchases of contraband at numerous locations, and the information provided by the CI will be used in the future for warrants. (Exh. 2, ¶8).

Within ten days prior to the date of the execution of the Search Warrant, the CI made a controlled purchase of cocaine at 2651 Jackson Street. (Exh. 2, ¶9). Prior to the controlled purchase, the CI was searched and no illegal drugs or money were found on the CI. (Exh. 2, ¶9). The CI had a concealed electronic transmitting device on him/her, and the CI was monitored during the controlled purchase. (Exh. 2, ¶9). The CI was provided with United States currency from the Fort Myers Police Department funds and the currency was recorded for later identification. (Exh. 2, ¶9). Detective Petaccio was situated so that she could observe the CI at the residence. (Exh. 2, p. 5, ¶9). The CI knocked on the door of the residence. (Exh. 2,¶9). Diane Powell answered the door and the CI asked to purchase cocaine from her. (Exh. 2, ¶9). The CI gave Diane Powell the money from Officer

Petaccio, Diane Powell took the money, and entered into the residence. (Exh. 2, ¶9). Diane Powell returned to the front door and handed cocaine to the CI. (Exh. 2, p. 5, ¶9). The entire transaction was witnessed by Detective Petaccio. (Exh. 2, ¶9). The CI returned to Detective Petaccio without stopping or making any contacts with anyone. (Exh. 2, ¶9). The CI gave the cocaine to Detective Petaccio and then Detective Petaccio searched the CI and found no money or contraband on the CI. (Exh. 2, ¶9). The CI identified Diane Powell from a photograph shown to the CI. (Exh. 2, ¶9). The cocaine field tested positive. (Exh. 2, ¶9).

The Defendant argues that the reliability of the CI was not shown and that the CI had no proven track record of providing reliable information. It is correct that the CI had only provided information to the police for three weeks. However, the reliability of the CI was shown by the controlled and monitored purchase of the cocaine. The CI was searched prior to conducting the controlled buy and was electronically monitored by Officer Petaccio. Further, Officer Petaccio witnessed the entire transaction. Although the CI did not enter the residence to obtain the cocaine, Diane Powell was seen entering the residence and then returning to the door with the cocaine. The Court finds that based upon the totality-of-the-circumstances, the CI was proven to be reliable by the controls in place during the controlled buy.

**B. Staleness**

The Defendant argues that some of the information in the Application and Affidavit for Search Warrant was stale. The Defendant argues that the tips in support of the warrant occurred in January and February 2009, and that Office Petaccio conducted surveillance in February 2009. "'A warrant application based upon stale information of previous misconduct is insufficient, because it fails to create probable cause that similar or other improper conduct is continuing to occur.'" *United States*

*v. Schimmel*, 317 Fed.Appx. 906, 909 (11th Cir. 2009) (quoting *United States v. Bascaro*, 742 F.2d 1335, 1345-46 (11th Cir. 1984) abrogated on other grounds by *United States v. Lewis*, 492 F.3d. 1219 (11th Cir. 2007)). In determining whether the information was stale, the Court examines the length of time between when the information was obtained and the time the search warrant was executed, the nature of the crime, the habits of the accused, the character of the items sought, and the nature and function of the premises searched. *Id*. (citing *United States v. Bernaldi*, 226 F.3d 1256, 1265 (11th Cir. 2000). Courts distinguish between criminal activity that is protracted and continuing and criminal activity that is isolated. *Id*. (citation omitted). Drug trafficking operations are generally protracted and continuous. *Id*. Further, if the government updates or corroborates the information, then the stale information is not fatal. *Id*.

In the instant case, the Affidavit and Application for Search Warrant contained the information that Officer Dominic Zammit received numerous complaints from concerned citizens at neighborhood watch meetings over a three month period prior to the execution of the Search Warrant. (Exh. 2, ¶5). These citizens saw numerous people conduct hand-to-hand transactions with Darryl Powell and Diane Powell in the yard in front of the residence. (Exh. 2, ¶5). These citizens knew what hand-to-hand drugs transactions looked like. (Exh. 2, ¶5). The officers also received an anonymous complaint on February 10, 2009, that hand-to-hand drug transactions occurred everyday at the residence involving a black male and white female and that several children lived at the residence. (Exh. 2, ¶6). After receiving this information Detective Petaccio conducted surveillance of the residence, but she did not include the dates of the surveillance in the Affidavit and Application for Search Warrant. (Exh. 2, ¶7).

The information from the neighborhood watch was provided within three months of the execution of the Search Warrant. The information provided showed a continuing and ongoing illegal drug operation from the residence at issue. The information provided on February 10, 2009 corroborated that the illegal drug operation was continuing and not an isolated incident. The Court finds that viewing the entire Affidavit and Application for Search Warrant, the information from the anonymous tip, the neighborhood watch, and the controlled purchase taken together establishes probable cause to believe that contraband would be found at 2651 Jackson Street.

**C. Firearm and Ammunition**

The Defendant asserts that the officers exceeded the scope of the search warrant when the officers seized the .22 caliber rifle and the ammunition. The Government argues that the officers did not exceed the scope of the Search Warrant. The Affidavit and Application for Search Warrant which was specifically incorporated by reference and made a part of the Search Warrant contained the following language regarding the evidence that might be found in the residence: "Any weapons used in the commission of and/or protection of the cocaine." (Exh. 2, p.3). Further, when a search is authorized by a valid search warrant, then officers are permitted to seize weapons and ammunition that constitute incriminating evidence that are in plain view. *United States v. Miller*, 156 Fed.Appx. 281 (11th Cir. 2005) (citing *Horton v. California*, 496 U.S. 128 (1990)). In the instant case, the officers were at the residence pursuant to a valid Search Warrant. Officer Petaccio knew that the Defendant was a convicted felon and was not permitted to possess a firearm or ammunition, and therefore the weapon was incriminating evidence not only pursuant to the crimes listed in the Search Warrant but also as to the additional violation of a felon in possession of a firearm and ammunition. Therefore, the Court finds that the seizure of the rifle and ammunition did not exceed the scope of the search

warrant, and even if it is found to have exceeded the scope, the items were permitted to be seized pursuant to the plain-view doctrine. Therefore, the Court finds that the rifle and ammunition seized should not be suppressed.

**C.** *Miranda*

The Defendant argues that he invoked his right to counsel and that all statements made by him should be suppressed. The Government asserts that after the Defendant invoked his right to counsel, he made spontaneous statements which should not be suppressed. The Defendant was given his *Miranda* rights and he stated that he understood them. The Defendant was then taken into the residence and questioned. (Exh. 1). The questioning continued until the Defendant requested counsel and then all questioning ceased. (Exh. 1). Officer Petaccio testified that after the Defendant invoked his right to counsel she did not interview him any further.

As Detective Petaccio stepped out of the residence after the search, the Defendant asked her what his charges were. She informed him of the charges and then the Defendant stated that he was holding the ammunition for his grandfather, and the firearm was a BB gun. Further, later in the holding cell he responds to his wife's statement. The testimony is that the officers did not question or conduct any type of interview after the Defendant invoked his right to counsel and he made these spontaneous statements. The Defendant was not coerced in any way by the officers, and the statements he made were voluntary. "As a general proposition, the law can presume that an individual who, with a full understanding of his or her rights, acts in a manner inconsistent with their exercise has made a deliberate choice to relinquish the protection those rights afford." *Berghuis v. Thompkins*, _____ S.Ct. _____, 2010 WL 2160784, *11 (June 1, 2010) (citations omitted). In the instant case, the Defendant clearly understood his *Miranda* rights as evidenced by his request for counsel. There

was no evidence that any of his statements were coerced or in response to any questioning by officers. Therefore, the Court determines that the statements made by the Defendant were voluntary and should not be suppressed.

**IT IS RESPECTFULLY RECOMMENDED:**

The Motion to Suppress (Doc. 18) be denied.

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Respectfully recommended in Chambers in Ft. Myers, Florida this  9th  day of July, 2010.

_____
DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies: All Parties of Record